1
2
3
4
5
6
7
8           UNITED STATES DISTRICT COURT
9           CENTRAL DISTRICT OF CALIFORNIA
10
11   LEONA HODO,                 ) Case No. ED CV 06-362-OP
                                  )
12              Plaintiff,        )
                                  ) MEMORANDUM OPINION AND
13        v.                      ) ORDER
                                  )
14   MICHAEL J. ASTRUE,[1]        )
     Commissioner of Social      )
15   Security,                    )
                Defendant.        )
16   ─────────────────────────   )
17
         The Court[2] now rules as follows with respect to the three disputed issues
18
     listed in the Joint Stipulation ("JS").[3]
19

20       ─────────────────

21       [1]  On February 12, 2007, Michael J. Astrue became the Commissioner
22   of the Social Security Administration.  Thus, Michael J. Astrue is substituted
     for Commissioner Jo Anne B. Barnhart pursuant to Rule 25(d) of the Federal
23   Rules of Civil Procedure.

24       [2]  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed
25   before the United States Magistrate Judge in the current action.  (See Dkt.
     Nos. 8, 9.)
26
         [3]  As the Court advised the parties in its Case Management Order, the
27   decision in this case is being made on the basis of the pleadings, the
28                                           (continued...)

                              1

1

2

# I.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues which Plaintiff is raising as the grounds for reversal and/or remand are as follows:

1)    Whether the ALJ properly considered the treating physician's opinion of functional status;

2)    Whether the ALJ properly considered the lay witness testimony; and

3)    Whether the ALJ accepted jobs from the vocational expert ("VE") that are not consistent with the Dictionary of Occupational Titles ("DOT").

(JS at 2.)

# II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401

---

[3](...continued)
Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(citation omitted).  The Court must review the record as a whole and consider adverse as well as supporting evidence.  <u>Green v. Heckler</u>, 803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld.  <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1452 (9th Cir. 1984).

**III.**

**DISCUSSION**

**A.    The ALJ Properly Considered the Treating Physician's Opinion of Functional Status.**

On September 3, 2003, Dr. Samuel E. Dey, Jr., a treating physician, diagnosed Plaintiff with bipolar disorder, depressed type, and hypothyroidism, and assigned a Global Assessment of Functioning ("GAF") score of 50. (Administrative Record ("AR") at 161.)  Dr. Dey also indicated that Plaintiff's GAF score had been 50 for the past year.  (<u>Id.</u>)  A GAF score of 50 falls at the upper end of the "serious symptoms" category, described as "(suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  <u>Diagnostic and Statistical Manual of Mental Disorders</u> 32-34 (American Psychiatric Ass'n ed., 4th ed. 2000) ("DSM-IV").

Plaintiff contends that the ALJ failed to state whether he accepted or rejected Dr. Dey's diagnoses and also misstated Dr. Dey's GAF score as being indicative of a "moderate functional limitation."[4]  (JS at 3.)  As a result, Plaintiff claims the ALJ impermissibly and selectively considered the evidence to support his own conclusions.  (<u>Id.</u>)

It is well established in the Ninth Circuit that a treating physician's

---

[4]  GAF scores of 41-50 fall into the serious symptoms category; scores of 51-60 fall into the moderate symptoms category.  DSM-IV at 34.

3

opinion is entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. <u>McAllister v. Sullivan</u>, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §§ 404.1527(d), 416.927(d). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995); <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Magallanes</u>, 881 F.2d at 751; <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th Cir. 1987).

In his decision, the ALJ discussed Dr. Dey's diagnoses, apparently accepting that Plaintiff has bipolar disorder and controlled hypothyroidism. (AR at 13 ("Ms. Hodo has affective disorders involving bipolar disorder, depressed type"; "The evidence also supports a finding that Ms. Hodo's hypothyroid condition is under control . . ."), 14 ("The diagnoses were: bipolar disorder . . .").) The ALJ found Plaintiff's mental impairments to be "severe" as defined in 20 C.F.R. § 416.920(c). (<u>Id.</u> at 17.) Thus, there is no indication that the ALJ actually rejected Dr. Dey's diagnoses.

Plaintiff also complains, however, that the ALJ failed to properly consider the GAF score of 50 assessed by Dr. Dey. (JS at 3, 6-7.) GAF scores reflect the "clinician's judgment of the individual's overall level of functioning and include[] psychological, social and occupational functioning" and are not

4

meant to be a conclusive medical assessment of overall functioning, but rather, are only intended to be "useful in planning treatment[,] . . . measuring its impact, and in predicting outcome." DSM-IV 32-34. Moreover, the Social Security regulations do not require an ALJ to take the GAF score into account in determining the extent of an individual's disability. While the score may help the ALJ assess the claimant's ability to work, it is not essential, and the ALJ's failure to rely on the GAF does not constitute an improper application of the law. Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the [residual functional capacity ("RFC")], it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate.").

Here, the ALJ found that Plaintiff had the RFC to perform medium work involving moderately complex tasks but "should have no interaction with the general public." (AR at 15.) There was ample additional evidence to support this determination. In January 2003, Dr. Dey himself reported that Plaintiff was only mildly anxious but not agitated. (Id. at 163.) Her speech was "clear, audible, understandable and not pressured," and she had no thought disorder. (Id.) He also reported she was then working at J.C. Penney. (Id.) In October 2003, Plaintiff reported that her medication was not effective at relieving her panic attacks or depression (id. at 160), but by April 2004, she reported the medication had been partially effective, and her panic attacks were noted as "mild." (Id.) Dr. Dey never made any assessment of limitations based on Plaintiff's mental status. Consultative examiner, Dr. Abejuela, diagnosed Plaintiff with mild depression and mild anxiety and found she would be able to follow simple and complex instructions. (Id. at 14, 136.) He found that her social and occupational functioning was not severely impaired, nor was her concentration, persistence, and pace. (Id. at 15, 136.) He also found no severe

5

impairment with Plaintiff's response to coworkers, supervisors, and the public. (Id.) The state agency reviewing physician, Dr. Gross, found Plaintiff's mental status examination to be "largely intact." (Id. at 15, 164-65.) He noted she would have difficulty working with the public. (Id.) State agency reviewing physician, Dr. Paxton, found Plaintiff moderately limited in her ability to understand and remember detailed instructions, to carry out detailed instructions, and to interact appropriately with the general public. (Id. at 140-41.) He concluded she had no adaptive limitations and could do simple tasks with no public interaction. (Id. at 140-42.)

Accordingly, the Court finds the ALJ's RFC assessment is based on substantial evidence. Thus, the Court finds no error in regard to the ALJ's failure to mention Dr. Dey's GAF finding.

**B.    Lay Witness Testimony.**

Plaintiff contends the ALJ did not properly consider the lay witness testimony of her boyfriend and failed to provide germane reasons for disregarding his testimony. (JS at 7.)

Plaintiff's boyfriend, Thoma Hilmes, completed a third party function report on behalf of Plaintiff. (AR at 105-113.) In that report, Mr. Hilmes indicated that Plaintiff has a hard time falling asleep and wakes up several times during the night. (Id. at 106.) He needs to remind her to take her medicine on time, and pay her bills. (Id. at 107.) He claims she does not like being around other people and is scared to drive. (Id. at 108.) He also indicated she cannot balance her savings account and is not good with money. (Id.) With respect to her mental condition, Mr. Hilmes states that Plaintiff has difficulty with memory, concentration, completing tasks, following instructions, and getting along with others. (Id. at 110.) Finally, he notes that Plaintiff does not handle stress "at all," "doesn't like changes at all" in her routine, and "doesn't like being around other people." (Id. at 111.)

6

1    Title 20 C.F.R. sections 404.1513(d) and 416.913(d) provide that, in
2    addition to medical evidence, the Commissioner "may also use evidence from
3    other sources to show the severity of [an individual's] impairment(s) and how it
4    affects [her] ability to work."  Further, the Ninth Circuit has repeatedly held that
5    "[d]escriptions by friends and family members in a position to observe a
6    claimant's symptoms and daily activities have routinely been treated as
7    competent evidence."  Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987).
8    This applies equally to the sworn hearing testimony of witnesses (see Nguyen v.
9    Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)), as well as to unsworn statements
10   and letters of friends and relatives.  See Schneider v. Comm'r of Soc. Sec.
11   Admin., 223 F.3d 968, 974 (9th Cir. 2000).  If the ALJ chooses to reject such
12   evidence from "other sources," he may not do so without comment.  Nguyen,
13   100 F.3d at 1467.

14   When rejecting lay witness testimony, the ALJ must provide "reasons
15   that are germane to each witness."  Dodrill v. Shalala, 12 F.3d 915, 919 (9th
16   Cir. 1993).  Nor is an ALJ relieved of his obligation to comment upon lay
17   witness testimony simply because he has properly discredited the plaintiff's
18   testimony.  To find otherwise would be based upon "the mistaken impression
19   that lay witnesses can never make independent observations of the claimant's
20   pain and other symptoms."  Id.

21   The Commissioner purports to rely in part on Vincent v. Heckler, 739
22   F.2d 1393 (9th Cir. 1984), for the proposition that an ALJ's failure to address
23   lay witness testimony does not require reversal because that testimony is not the
24   equivalent of medically acceptable evidence ordinarily relied upon to establish a
25   disability.  (JS at 9.)  However, as Plaintiff points out, the Ninth Circuit found
26   in a subsequent decision that the Commissioner's reliance on Vincent for that
27   proposition was misplaced.  Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir.
28   1996).  The Nguyen court distinguished Vincent on the basis that the lay

7

witnesses in <u>Vincent</u> "were making medical *diagnoses*, e.g., that the claimant had a serious mental impairment as a result of a stroke," and that "[s]uch medical diagnoses are beyond the competence of lay witnesses and therefore do not constitute competent evidence." <u>Id.</u> at 1467. The <u>Nguyen</u> court held that "lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence," and "therefore *cannot* be disregarded without comment." <u>Id.</u> (citing <u>Dodrill</u>, 12 F.3d at 919). More recently, in <u>Stout v. Comm'r Soc. Sec. Admin.</u>, 454 F.3d 1050, 1053 (9th Cir. 2006), the Ninth Circuit reaffirmed the <u>Nguyen</u> holding.

Any reliance by the Commissioner on <u>Ukolov v. Barnhart</u>, 420 F.3d 1002, 1006 n.6 (9th Cir. 2005), for the proposition that where lay testimony encompasses only symptoms, failure of the ALJ to address that testimony is not a ground for reversal (JS at 8), also is misplaced. In <u>Ukolov</u>, the Ninth Circuit merely noted that because none of the medical evidence established the existence of an impairment, the ALJ's failure to address the lay witness' testimony concerning symptoms did not affect the outcome of the case. Here, by way of contrast, the ALJ did find in his decision that the medical evidence established the existence of severe mental impairments. (AR at 17.)

The ALJ's failure to address the witness' testimony generally is not harmless.[5] In failing to address a lay witness' statement, the error is harmless only if "a reviewing court . . . can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." <u>Stout</u>, 454 F.3d at 1053; <u>see also</u> <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006).

---

[5] The harmless error rule is applicable in Social Security cases. <u>See</u> <u>Booz v. Sec'y of Health & Human Servs.</u>, 734 F.2d 1378, 1380 (9th Cir. 1984).

8

Here, the ALJ's decision made no reference at all to Mr. Himle's written statement.  However, the Court finds that it is quite possible that based on Mr. Himle's statements regarding Plaintiff's capabilities and limitations, the ALJ in fact did <u>not</u> reject his statements.  He specifically found a limitation that Plaintiff should have no interaction with the general public, clearly consistent with Mr. Himle's statements.  As previously mentioned, the suggested jobs which the VE testified Plaintiff was able to do given her RFC and attendant limitations were of an unskilled nature requiring  "little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 416.968(a).  This also is consistent with Mr. Himle's statements regarding Plaintiff's inability to concentrate, remember, complete tasks, or follow instructions.

Moreover, while acknowledging some limitations due to Plaintiff's impairments, Mr. Himle also stated that he and Plaintiff "do a lot of things together."  (AR at 105.)  He stated that she cleans the house and gets her five children off to school every day; makes dinner every day; cooks, cleans, and does laundry for her five children; takes care of pets; has no problem with personal care; shops for groceries; goes to church weekly; follows spoken instructions "alright"; and gets along "alright" with authority figures.  (<u>Id.</u> at 105-111.)

Accordingly, even if the function report completed by Mr. Himle was fully credited, this Court finds that no reasonable ALJ could have reached a different disability determination based on that report.  <u>Stout</u>, 454 F.3d at 1056.

**C.**     **<u>The Jobs Suggested by the VE Were Consistent with the DOT</u>.**

During the administrative hearing, the ALJ asked the VE, "With respect to mental/emotional impairments, functionally, she should be restricted to moderately complex tasks, and she should not be placed in charge of safety of others."  (AR at 223.)  "Given those two restrictions or limitations, would she

9

1  be able to perform any of her prior work?"  (Id.)  The VE answered

2  affirmatively.  (Id.)  The ALJ then added the limitation of "no interaction with

3  the general public, or very limited interaction with the general public."  (Id. at

4  224.)  The VE opined that Plaintiff could still perform medium exertional level

5  unskilled work such as laborer/storer (a warehouse position), assembler, or

6  packager.  (Id.)

7       Plaintiff claims that the ALJ's RFC limitations are inconsistent with the

8  jobs the VE suggested Plaintiff could perform.  As a result, the ALJ failed to

9  sustain his burden of proving there is other work in the economy Plaintiff can

10  perform.  (JS at 16.)  Specifically, Plaintiff claims that each of the suggested

11  jobs requires a "reasoning level" of two as set forth in the DOT, a level which

12  she claims is inconsistent with the ALJ's RFC and with Dr. Paxton's opinion

13  that Plaintiff was moderately limited in her ability to understand and remember

14  detailed instructions and the ability to carry out detailed instructions, and,

15  therefore, should be limited to simple tasks.  Plaintiff apparently argues that she

16  should be restricted to a job with a reasoning level of one.  The Court does not

17  agree.

18       A job's reasoning level "gauges the minimal ability a worker needs to

19  complete the job's tasks themselves."  Meissl v. Barnhart, 403 F. Supp. 2d 981,

20  983 (C.D. Cal. 2005).  Reasoning development is one of three divisions

21  comprising the General Educational Development ("GED")[6] Scale.  DOT App.

22  C.  The DOT indicates that there are six levels of reasoning development.  Id.

23

24       [6]  The GED scale "embraces those aspects of education (formal and

25  informal) which are required of the worker for satisfactory job performance.
   This is education of a general nature which does not have a recognized, fairly

26  specific occupational objective.  Ordinarily, such education is obtained in

27  elementary school, high school, or college.  However, it may be obtained from
   experience and self-study."  DOT App. C.

28

Level two provides that the individual will be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." Id. Plaintiff apparently contends she is limited to a reasoning level of one, which provides that an individual must be able to "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." Id.

Although the ALJ found that Plaintiff could perform medium level work involving moderately complex tasks, each of the jobs suggested by the VE were unskilled jobs "which need[] little or no judgment to do simple duties that can be learned on the job in a short period of time," here, requiring anything beyond a short demonstration up to and including one month. 20 C.F.R. § 416.968(a). The Court finds that the suggested jobs, and numerous others within the same general categories suggested by the VE, and as set forth by Defendant (see, e.g., JS at 17-18), fall actually well within the ALJ's RFC determination and constitute little more than simple, routine type jobs. (Id.) See, e.g., Meissl, 403 F. Supp. 2d at 984-85 (finding that reasoning development Level 2 does not conflict with the ALJ's prescribed limitation that plaintiff perform simple, routine tasks); Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding that reasoning development Level 2 appears to be consistent with plaintiff's RFC of "simple and routine work tasks").

Moreover, these positions do not conflict with Dr. Paxton's finding that Plaintiff was moderately limited in her ability to understand and remember detailed instructions and the ability to carry out detailed instructions. As explained by the court in Meissl, the Social Security Regulations contain only two categories of abilities in regard to understanding and remembering things: "short and simple instructions" and "detailed" or "complex," instructions.

11

1  Meissl, 403 F. Supp. 2d at 984.  The DOT has many more gradations for
2  measuring this ability, six altogether. Meissl, 403 F. Supp. 2d at 984.  The court
3  explained:

4         To equate the Social Security regulations use of the term "simple"
5         with its use in the DOT would necessarily mean that all jobs with a
6         reasoning level of two or higher are encapsulated within the
7         regulations' use of the word "detail." Such a "blunderbuss" approach
8         is not in keeping with the finely calibrated nature in which the DOT
9         measures a job's simplicity.

10 Meissl, 403 F. Supp. 2d at 984.

11         Furthermore, the term "uninvolved" in the DOT level two explanation
12 qualifies the term "detailed" and refutes any attempt to equate the Social
13 Security Regulations' use of the term "detailed" with the DOT's use of that
14 term.  Id.  The Meissl court also found that a plaintiff's RFC must be compared
15 with the DOT's reasoning scale.  A reasoning level of one suggests the ability
16 to perform slightly less than simple tasks that are in some sense repetitive.  For
17 example, they include the job of counting cows as they come off a truck or
18 tapping the lid of a can with a stick.  Id.  The ability to perform at least
19 moderately complex tasks, therefore, indicates a level of reasoning
20 sophistication somewhere above level one.  See, e.g., Hackett, 395 F.3d at 1176
21 (holding that "level-two reasoning appears more consistent with Plaintiff's
22 RFC" to "simple and routine work tasks").  The DOT's level two definition
23 provides that the job requires the understanding to carry out detailed
24 instructions, with the specific caveat that the instructions be "uninvolved" – that
25 is, not require a high level of reasoning.  Meissl, 403 F. Supp. 2d 981 at 984-85.
26 The suggested medium exertional level jobs at reasoning level two and below

27
28

12

are well within Plaintiff's RFC capabilities.[7]

Accordingly, the Court finds that the ALJ sustained his burden of proving there is work in the economy that Plaintiff can perform.

## IV.

## ORDER

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

DATED:  April 28, 2008

HONORABLE OSWALD PARADA
United States Magistrate Judge

_____

[7]  A person who can perform medium work can also perform light and sedentary work.  20 C.F.R. § 416.967(c).

13